J-S22040-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRADLEY ARNDT, | : | |
| | : | |
| Appellant | : | No.  804 MDA 2015 |

Appeal from the Judgment of Sentence April 23, 2015
in the Court of Common Pleas of Berks County,
Criminal Division, at No(s): CP-06-CR-0004253-2013

BEFORE:    MUNDY, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                  **FILED APRIL 13, 2016**

Bradley Arndt (Appellant) appeals from the April 23, 2015 judgment of sentence imposed following his convictions by a jury for one count each of rape, involuntary deviate sexual intercourse (IDSI), sexual assault, stalking, simple assault, and false imprisonment.  We affirm.

In August of 2013, Appellant was arrested and charged with, *inter alia*, the aforementioned offenses for events that occurred while Appellant and the victim were involved in a romantic relationship.  We summarize the events leading to Appellant's arrest.

The victim and her four children moved into Appellant's home in 2010.  According to the victim, the relationship changed beginning in November of 2011.  At that point, the victim "had to be with [Appellant], like, all the time." N.T., 1/26-29/2015, at 89.  She "had to take showers with him." **Id**.

*Retired Senior Judge assigned to the Superior Court.

When she left the house without Appellant, he texted and called her "excessively." *Id*. at 90. The victim then moved out in November of 2011 because she "found a picture of his ex-girlfriend on his phone; that combined with the clinginess." *Id*. She moved back in with her husband, Richard, who is also the father of two of her children.[1]

After one to two months living with Richard, the victim went back to living with Appellant because she "loved him" and "missed him." *Id*. at 92. After another month, things were not working out with Appellant, and the victim moved back in with Richard. After another month or two, in April of 2012, the victim moved back in with Appellant because "he promised [they] would go to counseling." *Id*. at 94.

After just one counseling appointment, the victim testified that the "relationship just got really bad." *Id*. Around the same period of time, in April 2012, the victim stated that Appellant became "[v]iolent and physical." *Id*. For example, when the victim spent a night at the home of her friend, Sabrina, Appellant accused the victim of "cheating on him." *Id*. at 96. When the victim and Sabrina went back to Appellant's house the next day, Appellant then asked the victim to go into the bedroom and left Sabrina sitting in the living room. The victim testified that Appellant pushed her

---

[1] The victim calls Richard her "ex-husband;" however, the two were legally married in 2003 and have never divorced. The victim testified that they are "separated." N.T., 1/26-29/2015, at 91.

onto the bed and had sex with her over her objection (April 2012 incident). The victim came out of the bedroom and told Sabrina that Appellant raped her, and then the victim drove Sabrina home.[2]

The victim next testified about events that happened on July 22, 2012 (July 2012 incident). She testified that she and Appellant had been arguing about money. The two went to a McDonald's drive-thru, and the victim ordered a frozen drink. After they pulled out of the drive-thru, they began arguing about the cost of the frozen drink. The argument escalated and Appellant injured the victim. The victim went home, got her children, and went to her mother's house. The victim's mother called police,[3] and the victim went to the hospital.[4]

The victim stayed with her mother for a few days then moved back in with Appellant. In late 2012, Appellant moved out of his house to live with his parents. The victim and her children remained in Appellant's house until

---

[2] Sabrina's testimony differed from the victim's testimony. Sabrina testified that the victim came out of the bedroom "with tears in her eyes" after about ten or fifteen minutes saying that Appellant had sex with her. N.T., 1/26-29/2015, at 41. However, Sabrina also testified that she has "a memory problem sometimes." *Id*. at 49.

[3] Officer Charles Hobart went to the hospital to see the victim. He testified that the victim told him that she "had been struck in the face by her boyfriend." *Id*. at 30. At the victim's request, police filed simple assault charges against Appellant. Those charges were subsequently dismissed because the victim did not "wish to testify at that time." *Id*. at 35.

[4] The emergency room doctor who saw the victim testified that the victim "was hit in the face, and she sustained an abrasion on the bridge of the nose and of the cheek." *Id*. at 23. An x-ray of the nasal bone revealed a fracture.

April 2013 when they moved in with a friend, Mark. The victim testified that they "just left to get away" and "didn't take most of anything." *Id*. at 114.

On May 1, 2013, the victim and her friend, Alisha, went to Appellant's home to retrieve her things. The victim got her children's beds and went back to Mark's house. Appellant then sent the victim a text message asking if she was going to get the rest of her things. The victim also testified that the reason she wanted to go back and get more things for her kids was because she "was dealing with [CYS] … [and she] was worried that her kids didn't have really anything." *Id*. at 132.

The victim then went back to Appellant's house by herself. She testified that Appellant started to "grab [her] butt." *Id*. at 133. The victim told Appellant she was going to leave, and Appellant "pushed [her] down on the chair … that has a foot stool attached to it" in the living room. *Id*. Appellant tried to take off the victim's pants, but she pushed him away. The victim testified that she tried to leave the house, but Appellant blocked her from doing so. Eventually, Appellant pushed the victim into the bedroom and onto the bed; took her pants off; and, attempted to have oral sex with her. The victim pushed and kicked Appellant away. She testified that Appellant then raped her. *Id*. at 138. When he finished, the victim ran outside to the truck and left (May 2013 incident).

The victim then went to the hospital where a rape kit was performed. The hospital contacted police, and Detective Michael Hoffert of the Bern

Township Police Department responded. He spoke with the victim, whom he described as "extremely upset," "crying," and "nervous." *Id*. at 262. During the conversation, the victim was receiving text messages from Appellant. Detective Hoffert later received copies of the text messages exchanged between Appellant and the victim. In total, there were 147 text messages from Appellant to the victim, and 13 from the victim to Appellant.

One text message from Appellant to the victim read, "Are you mad? 'Cause I asked you first, baby." *Id*. at 146. Another message sent by Appellant stated, "Well, here goes our money, mine and yours to the state. Why [victim]? I asked you first. I did not make you, baby. I asked you." *Id*. at 148. In a statement to police, Appellant admitted that he and the victim had sex, but believed it to be consensual. Commonwealth's Exhibit 9, 5/1/2013, at 3.

Subsequently, Appellant was arrested and charged with numerous crimes related to the April 2012 incident, July 2012 incident, and May 2013 incident. After the presentation of the Commonwealth's case at trial, the trial court granted Appellant's motion for judgment of acquittal with respect to certain charges. The jury found Appellant guilty of rape and sexual assault specifically with respect to the May 2013 incident. The jury also found Appellant guilty of IDSI, stalking, simple assault, and false imprisonment. The jury found Appellant not guilty of other charges, including rape related to the April 2012 incident.

On April 23, 2015, Appellant was sentenced to an aggregate term of five to ten years of incarceration to be followed by five years of probation. Appellant, through counsel, timely filed a post-sentence motion. The trial court denied Appellant's post-sentence motion, and Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents three issues for our review.

> 1. Whether the trial court erred in denying Appellant's post[-]sentence motion challenging the weight of the evidence where the jury concluded that the victim was not credible regarding one of the two alleged incidents of rape and related offenses?
>
> 2. Whether the trial court erred in denying as untimely defense counsel's motion for a mistrial made at the close of the Commonwealth's opening wherein the Commonwealth mentioned [CYS] caseworkers' involvement in the relationship between Appellant and the alleged victim, characterizing the relationship as "toxic" and asserting alleged abuse by Appellant, all in direct contradiction to the ruling of the trial court?
>
> 3. Whether the trial court erred in allowing testimony by a [CYS] caseworker, over the objection of counsel, regarding Appellant's demeanor prior to one of the alleged incidents of rape which resulted in the inadmissible evidence of prior bad acts and bad reputation evidence.

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant first claims that "the trial testimony of the alleged victim … was fraught with lies, half-truths, and fabrications, and motivated by a desire to punish Appellant, thereby rendering the verdict issued in reliance on her testimony questionable and contrary to the weight of the evidence."

Appellant's Brief at 14. Specifically, Appellant points to inconsistencies in the victim's testimony, including when the relationship with Appellant began; whether or not she worked at a job during the relationship; and whether or not her relationship with Richard was also abusive.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

The trial court offered the following assessment.

> At trial, the victim testified about two alleged sexual incidents. She testified that one incident occurred in [April] 2012 and the other occurred on May 1, 2013. Based on the jury's verdicts, they found her testimony credible to support guilty verdicts beyond a reasonable doubt on the sexual incident occurring on May 1, 2013. It was the jury's role to make that determination and it was not so contrary to the evidence as to shock one's sense of justice. There were clear factual

distinctions between the incidents; specifically, the victim's prompt outcry following the May 2013 incident.

Trial Court Opinion, 9/9/2015, at 3-4 (citations omitted).

We discern no abuse of discretion in the trial court's conclusion. As the trial correctly observed, reconciling inconsistencies in the testimony was within the province of the jury. *Commonwealth v. Simmons*, 662 A.2d 621, 630 (Pa. 1995) ("After examining the evidence in this case, we find that appellant's assertion that the inconsistencies in the witnesses' testimony rendered them incredible to have no merit since the inaccuracies claimed are only minor and a witness's credibility is solely for the jury to determine."). Because we conclude the trial court did not abuse its discretion, Appellant is not entitled to a new trial on this basis.

Appellant next argues that the trial court erred by denying his motion for a mistrial which was made after the Commonwealth's opening statement. Appellant's Brief at 20-26. During the Commonwealth's opening statement, the assistant district attorney stated the following:

> Part of what you will hear from that witness stand is two social workers who worked with [the victim] and her family. You will hear while they interacted with [the victim], she received numerous text messages harassing her. You will hear that from their experience, this relationship became so toxic that [the victim] and [Appellant] were ordered to live apart. And it wasn't until that point when [the victim] was able to break free of the [Appellant's] control over her and eventually found a new place to live.

N.T., 1/26-29/2016, at 9-10.

- 8 -

At the close of the opening statement, Appellant's counsel requested a sidebar. At that point, the following exchange occurred:

[Counsel for Appellant:] This morning when we were in the retiring room, I believe the Court ruled on what they were allowed to say about the CYS caseworkers' involvement in this case, and they were not to mention that the basis of their involvement was the alleged abuse by my client. And in his opening, [the Commonwealth] characterized it as a toxic relationship, that they were forced to live separate and apart. Because of that, I'm asking the Court to grant a mistrial based upon that statement to the jury. It's a direct contradiction as to what the Court said in the retiring room just this morning, and I think there is no way to cure that.

\*\*\*

The Court: I know. I agree. I agree. Unfortunately, you did not say anything until the end of his opening. I would have granted it…. [Y]ou did not object at the time it happened…. The question was, I was asked to make a ruling as to whether or not you could bring evidence in that CYS separated these people, that a safety plan was put in effect because of the relationship, the nature of the relationship or actions by [Appellant]. I said you would not be able to do that because there are reasons why a safety plan is issued. So I don't understand why you said what you did in your opening, [Commonwealth]. You said -- you said as a result of the toxic relationship between [Appellant] -- that was created by [Appellant], they were forced to live apart. Your motion is denied, and I will give you a cautionary instruction.

\*\*\*

[The Court to the jury:] Ladies and gentlemen, there has been an objection by the defense to a portion of the opening address of the Commonwealth. I will indicate and reaffirm to you that the statements of counsel are not evidence for you to consider, not part of the evidence. No matter what an attorney says they think the evidence is going to be, whether it's the Commonwealth's attorney's opening or the defense's opening, it's only what you hear from the witnesses that actually testify. … I suggest that with regard to any type of evidence that was

[alluded] to by [the Commonwealth's attorney] as to the nature of the relationship between [Appellant] and the alleged victim, and that being of a toxic nature and there were consequences to that, that again is sort of like his -- his statement. It's not evidence. It's not part of the evidence. I ask you to completely disregard it, and let's see what the evidence actually is, if there is any evidence in regard to that.

N.T., 1/26-29/2015, at 11-13.

The trial court concluded that because "[t]rial counsel did not object immediately and waited until the close of the Commonwealth's statement to motion for a mistrial[, … ]the extreme remedy of a mistrial was not necessary and the [trial court] provided a cautionary instruction." Trial Court Opinion, 9/9/2015, at 5. Thus, the trial court concluded that it did not err in denying the mistrial.

> Our Supreme Court has held that [waiting to object until the end of an opening or closing statement] does not result in waiver so long as: (1) there is no factual dispute over the content of the prosecutor's argument (*e.g.*, the argument was recorded and available for review at trial); and (2) counsel objects immediately after closing argument with sufficient specificity to give the court the opportunity to correct the prejudicial effect of the improper argument.

*Commonwealth v. Rose*, 960 A.2d 149, 154 (Pa. Super. 2008).

Instantly, the Commonwealth's entire opening statement spans just four pages of the transcript. *See* N.T., 1/26-29/2016, at 7-10. Counsel for Appellant requested a sidebar immediately upon its conclusion. Thus, we hold the trial court erred in concluding that Appellant waived this issue by waiting until the end of the opening statement.

- 10 -

However, we cannot reach the merits of Appellant's argument because the record does not include what motion was made or ruled upon by the trial court that led to Appellant's objection. The record does not contain a written motion requesting the exclusion of this evidence, nor does it contain a written order. Thus, the only information we have about what evidence was purportedly excluded is the information offered by the trial court during side bar.

"It is settled that it is Appellant's responsibility to ensure that this Court has the complete record necessary to properly review a claim." *Commonwealth v. Kleinicke*, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*). "The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006). Accordingly, it was Appellant's responsibility to ensure that the motion and ruling made in the retiring room prior to trial were transcribed.[5] As it is this motion and ruling that form the basis for

---

[5] Alternatively, Appellant could have prepared and included a statement in absence of transcript pursuant to Pa.R.A.P. 1923, which provides: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection." Appellant did not include such a statement to this Court.

Appellant's request for a mistrial, we hold that Appellant has waived this issue for purposes of appeal because we are unable to review it.[6]

Finally, Appellant argues that the trial court erred by permitting a former CYS caseworker, Nicole Lesher, to testify about her observations of Appellant on April 26, 2013, just a few days prior to the May 2013 incident. Appellant's Brief at 26-29. Specifically, Appellant argues that Lesher's testimony about Appellant's palpable anger that day "unavoidably imbedded in the minds of the jurors that Appellant had a history of violence." *Id*. at 27. Thus, Appellant argues that the trial court's permitting of that testimony was reversible error.

We review this claim mindful of the following.

> Rulings on the admissibility of evidence are within the discretion of the trial judge, and such rulings form no basis for a grant of appellate relief absent an abuse of discretion. While it is true that evidence of prior crimes and bad acts is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character or criminal propensity, the same evidence may be admissible where relevant for another purpose. Examples of other such relevant purposes include showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a

---

[6] Even if Appellant had not waived this issue, the cautionary instruction offered by the trial court was sufficient to cure any prejudice. *See Commonwealth v. Jones*, 668 A.2d 491, 502 (Pa. 1995) (noting that despite improper remarks, "prejudice was cured by adequate cautionary instructions").

common scheme or design, or to establish identity…. [T]he evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. Of course, in addition to the relevance requirement, any ruling on the admissibility of evidence is subject to the probative value/prejudicial effect balancing that attends all evidentiary rulings.

***Commonwealth v. Powell***, [] 956 A.2d 406, 419 ([Pa.] 2008) (internal citations omitted).

The ban on prior bad acts evidence, and the lion's share of associated exceptions noted in ***Powell***, ***supra***, are set forth in Pa.R.E. 404(b). The *res gestae* or "history of the case" exception, however, does not spring from Pa.R.E. 404. It is a:

"special circumstance[,]" [one] where evidence of other crimes may be relevant and admissible … where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. This special circumstance, sometimes referred to as the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its **immediate** context of happenings **near in time and place**."

***Commonwealth v. Lark***, [] 543 A.2d 491, 497 ([Pa.] 1988) (emphasis added).

***Commonwealth v. Green***, 76 A.3d 575, 583-84 (Pa. Super. 2013) (some quotations and citations omitted).

Instantly, prior to Lesher's testimony, counsel for Appellant moved to exclude "statements about [Appellant's] being angry and having an angry

- 13 -

demeanor" which she made with respect to her observations of Appellant on April 26, 2013. N.T., 1/26-29/2015, at 221. Appellant argued that testimony about these observations would be in violation of Pa.R.E. 404(b). The trial court denied Appellant's motion.

During her testimony, Lesher stated the following.

> He was trying to tell me that -- he was saying to me not to believe what [the victim] was saying about him; that he's a good guy; and that he would never harm her and all of that kind of stuff. And when I was challenging what he was saying, he was barely controlling his anger towards me. He was very angry. He was red in the face and fidgeting, and you could see his clinched fists. And you could just see and feel the anger coming off of him.

N.T., 1/26-29/2015, at 232.

We conclude that Lesher's testimony was admissible under the aforementioned *res gestae* exception. Appellant's demeanor with respect to his relationship to the victim form part of the story to rebut Appellant's contention that he and the victim engaged in consensual sex on May 1, 2013. Accordingly, we conclude that the trial court did not err by permitting Lesher to testify about her observations of Appellant.

Because Appellant has not presented to this Court any issue that warrants relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/13/2016</u>